Mr. Lloyd maintained at the trial level that he had no knowledge pertaining to the activities of Mr. Bolden, who was unquestionably shown to have been conspiring and possessing amounts of contraband. This evidence of knowledge was, we claim, insufficient at the trial level, and not only was the evidence of knowledge insufficient, the rules that were advanced by the government to attempt to sustain the jury's verdict and adopted by the trial court, we believe are, or is, a rule that has been misstated and should be corrected. In addition to that, what is the elephant in the room, I suspect, is the very inferior quality of counsel's performance in adding evidence to the record of knowledge or intent that he should have not done. The first aspect of this is this rule used to support the verdict in the trial court, the ruling on the motions for acquittal and motions for new trial. The court may incorrectly apply a rule that presumes knowledge from possession of a package. That is to say, the knowledge of the contents of the package is presumed by virtue of the possession of the package. And as I read the cases that have sponsored the rule and have set forth the rule, it appears that we're getting more and more confused by this definition of mere possession of the package. It creates an inference of knowledge. That's circuitous. If you possess a package standing on a corner and it has 20 pounds of cocaine in it, just the fact that you're standing there with a package would, in and of itself, allow a presumption of knowledge. And that's, I believe, not the case. What we should be looking at is the surrounding circumstances other than just presumption of or just possession of the package. And as I've said, both the court in the Rule 29 and Rule 33 ruling adopted that rule in an effort to sustain the jury's verdict. Well, counsel, let's stop for a second. I understand why you're concentrating on are there drugs in the package, but don't we look at a larger question than that? I mean, when these drugs are sent, I believe your client says he's doing it as a favor for his cousin. Cousin's husband. But he uses a false name. It's sent under a false name. Well, that's actually you're saying that the package itself had a label that had a false name on it. The sender was listed as John Hobbs. OK, but the problem is he's doing this as a favor, but he doesn't. We don't know from the record whether, in fact, he's told, hey, I need this package mailed for a friend or or words that affect. In other words, he's mailing the package with a with a sender. Not is not where the sender is, not the cousin or the cousin's husband. Is that what the court is? Yeah. I mean, it seems to me that your argument, if we had the cousin's name on the package, that would be one thing. Here's a favor. I'd like you to mail this for me. But but instead, we've got some third party who's listed as the person who's sending. But how does that then raise an inference that there is contraband in the package? The fact that it's a John Hobbs instead of a Bolden or David Bolden or whatever his name is. You're severing out to the earlier incident where he checked into an extended stay motel using a false name and a fraudulent credit card and picked up a fetish package. The modus operandi is that, as it's called, was identical to that of Bolden. That's a different activity. Well, it's a different activity, but it's related to this because it's very similar. Both in the same conspiracy. Right. They are in the same conspiracy. Yes. The whole point is you look at the totality of the fact and circumstances. You don't isolate out one. And if you take a look at the totality, I mean, doesn't it support the proposition that he had knowledge of what was going on? Then he gets caught with all these cell phones and everything is hidden in mattresses. Well, the problem is, is somebody was up to no good. And when he checked into the motel, he checked in under a false name with both credit cards. Certainly that is all those things collectively. Right. I would think suggest he might have known something was wrong. Certainly the use of the credit card at the extended stay America in October is is a problem for him in the sense that he he obviously knows that he's using a credit card and a driver's license that are not his tracks. It's clear. Well, my concern with the the way that it was done in the trial court, though, is that in order to support is the court saying now that even if you don't use the rule of mere possession of a package, that all the other circumstances support the jury's verdict? Obviously, that's a different argument. And we take the position that what supports the jury's verdict is not just the circumstances of the courts that Your Honor's have put forth now and that have been set forth in the briefing and the record, but also the fact that there is a whole slew of evidence that comes in through defense questioning that adds to that. Now you're getting into the ineffective assistance of counsel. Right. Once once you superimpose that, all this stuff for the 1995 investigation where the counsel there, the question basically is how much harm does it do to add that to everything that's already there? Is it enough to undermine your confidence in the verdict? Right. It's a question of prejudice, I suspect. And as I as I thought about this, I certainly if you didn't have those other instances in ninety five where where he is asked to where the whole report about a two hundred and ten thousand dollar seizure came in and supposedly a Terry Lloyd made a claim for the money and and the opinion of the officer that he knew what he was doing. If you take that out and just look at the circumstances, the use of the credit card at the extended stay America to pick up a package, we don't know what the contents of of. Well, but a fair inference from all the evidence is that it was cocaine money. But you see, we don't know. You should assume that the two questions here. But let's look at the second question, the prejudice. Let's assume for the prejudice that there was sufficient evidence to convict him without the improper evidence, without the evidence that counsel volunteered on his behalf. Is it enough that there was sufficient evidence? Does that mean that it's not prejudicial? No. All right. So how do we determine whether this additional prejudice was such given that they could have convicted him without it? How do we determine whether this is so prejudicial that we would say we can't be confident of what the verdict would have been? Well, what I'm suggesting is that this was a very, very close case on knowledge just on the evidence presented by the government. Very close case. Mr. Lloyd is not. There is no evidence of lifestyle that which that is supported by big money from drugs. There is no evidence of drugs in this house. There is no all the government could come up with is an unused can of carpet deodorizer, which is similar to the one that was used at Bowman's unused, not used, which means packaging didn't take place at Mr. Lloyd's place. There are some FedEx boxes, FedEx materials, which is pretty common to have. So the everybody has a bunch of old FedEx boxes and not all the deodorizer around. Well, I have certainly everybody has to have a carpet. You should have come to deodorize. I don't know. But. But but the but the there weren't old boxes in Mr. Lloyd's house. We're just unused boxes. My problem with this is it's not an unrealistic strategy to me to attempt to distance my client as far as I can from Mr. Bolton. And that appears to be the pursuit of the defense counsel in this was to say, not my guy. He's got this person over here who's a very bad person and it's been going on for a long time. Oh, no. Why should analyze defense counsel for for trying something? If we want to quibble with your assumption of thin evidence versus fairly strong evidence. And this is my only way of saving my guy. No question that. The perceived strategy or the strategy that the defense counsel tried to put forth is to distance him Lloyd from both. No question about that. The problem is that he he really stumbled, fumbled and and and completely lost the game. When he asked an officer about a 95 investigation and asked him, what did the report say? He's inviting trouble. There was no other mention of the 1995 incident. Was it? Oh, no. Until he brought it out. That's correct. The government was very Mr. Kim tried the case, did a very good job of it. He stayed away not only before the evidence came in. He stayed away for after the evidence came in because he knew only evidence. He'd been previously involved with narcotics was when he tried to pick up the two hundred thousand dollars in 1995. And that connection that showed he had a long term involvement in narcotics was brought up by his counsel. And that that deals a death. That's a death knell to any attempt. If your suggestion is that you're trying to keep Bowdoin away from Lloyd and then you bring on this evidence that shows that Bowdoin is tied up with Lloyd, you just throw away your strategy. And that's exactly what defense counsel did here. Well, we're now over time. We'll still give you another minute or two. May please the court. Steve Kim for the United States. Your Honors, perhaps I could first begin by addressing the last point that Judge Reinhart mentioned, which was this two hundred and ten thousand dollar incident. The evidence was not I should make clear and I guess I am trying to defend trial counsel a bit here. The evidence was not that the defendant was identified as being involved in that seizure. The problem that occurred here was the report was prepared in 1995 by other D.A. agents, neither none of whom were percipient witnesses in this trial. He cross examined the agents and it became clear that the name Terry Lloyd was identified in the report. There was no reason to bring out the 1995 incident at all. Was it involved in the trial? If I were trial counsel, perhaps I would I would agree. But there was at least within the wide range of professionally competent assistance, a strategic purpose here which was articulated. It was that Bowdoin changed his tactics over time, that once he got caught from law enforcement in Ohio trying to transport money personally, he changed his tactics to Federal Express and then he changed his tactics again by using hotels and then ultimately decided I better start using unwitting dopes such as my cousin here to be. Except that is part of the evidence that counsel brought out was this unwitting dope had been doing this for eight years because he was involved in 1995, which the government didn't bring out. His own counsel did. Well, I don't think that it was brought out that way. When you look at the record, the cross examination, the defense attorney was trying to make clear to the witness. My client was never identified as actually having been involved, but his client was in the report that he was his name. His name was in the same name. He brought out a report and said, Mike, there's a guy with the same name involved was doing this eight years ago. Now, that's not my client. Is it? And the agent said, yes, it was your client. Well, the agent is confused by the question because of the way that the questioning occurred. But I think it ultimately comes out in the impeachment that you don't have any evidence that this is my client. And that's that's probably true. This was an investigation that I certainly had no involvement in. Happened to be somebody with the same name eight years ago. And that's what his lawyer wants to bring out voluntarily. Well, I think the government never said there was that he was involved before. Well, there's certainly a misstep. I think that he probably I don't know how he had evaluated the report. Not a misstep to say to a government agent. Is it your opinion that my my clients in the drug business and the government? Oh, yeah, sure. He's a real drug peddler. Well, sure. That's not ineffective. Well, it is not textbook cross examination. But it may be in another textbook. But, you know, constitutionally effective trial assistance is not the same as textbook cross examination. Better argument for you that this didn't affect the verdict. Well, certainly I don't think that it affected the verdict either at all, Your Honor. But I at least wanted to clarify from the record that there was no indication that the defendant was identified as being involved in that. And I think that's I'm really lost because it seems to me that there is. I mean, I just looked at this and and the lawyer starts trying to show that. Well, maybe it wasn't the same guy. Did you follow up to see if it was this? Mr. Lloyd answer eventually wasn't him, was it? Answer. I think it was. On what did you base that opinion? I got his DMV photo. And when we did the surveillance one evening, when we saw them shipping the seven kilos of coke, Mendoza recognized the person that shipped cocaine as being the person with Terry Lloyd's DMV photo. Informed the opinion it was the same person that tried to claim the money back in 1995. I mean, they nailed him as the same person. Well, I think that if the cross examination continues, Judge Trott, at the end of G.E.R. 258, he says, I understand you have a picture. But my question is, no one had a picture of who made that phone call, the phone call of the seizure. And he goes on, says, of course, he says, I don't think anyone took the picture of making the call. And defense counsel says, thank you. In other words, he made the point. Thank you for what? Thank you for making the point that we have no evidence. I don't have a picture of the telephone call. You don't know who the person was. You're speculating that the person you have is the person that made the phone call. Answer. It's the same person's name who was later identified as shipping seven kilos of cocaine. Did you have a picture of Mr. Lloyd? I don't think anybody had a picture of him making the phone call. But they identify him as the same guy trying to pick up the money. And then later on, he backs even worse into it. Then then why do you keep saying you didn't find then on what basis do you keep saying you didn't find his money? Answer. Because I believe he's a major narcotics dealer. He's part of a conspiracy. I mean, you're the lawyer just keeps backing into a fan. Well, the law here is unquestionably getting questions that you're not interested in. But the question for purposes of whether there's constitutionally ineffective assistance, if the standard were if you get unexpected, harmful responses, then most cross examination, certainly lots of cross examination that I've done would be deemed constitutionally. It's not whether you get unexpected responses is whether you ask stupid questions and bury your own client. Well, I think that in the context he is trying to impeach the agent's investigation. There was a broader attack here on the agent's investigation. He was trying to draw out gaps in the investigation, perceived weaknesses in the investigation. And that's the issue. But perhaps I should get the one thing that could absolutely bury his client. I mean, it wasn't a great position to be in to have to defend this case to start with. But to say that all these odd things that happened on this one incident, that he happened to go pick up a package, happened to use a phony name, all of that. If you could ever convince anybody that this was all because he was nice to his cousin, that sure went down the drain as soon as you showed that he'd been doing it for eight years. This wasn't an isolated incident. But that he tried to pick up $200,000 for the cousin, you know, eight years before. Well, perhaps I should get right to the prejudice question that you raised, Judge, because I think the evidence here was not just a case in which it was a mere presence case where the evidence was very thin. This was a very, very strong circumstantial case. I think that the defendant's theme on appeal is that this is just like the mere presence cases where you have a person who is just guilty by association, by mere proximity to illicit activity. There are three large activities here that make this a very strong circumstantial case, which is the circumstances surrounding the October 23 shipment itself shows a knowing participation in the conspiracy. That's number one. There's number two, the fact that defendant engages in illegal conduct that matches the modus operandi of the co-conspirators. And then, of course, there's physical evidence linking defendant to the conspiracy and showing guilty knowledge. These sorts of facts take this case away from the mere presence cases, which is why I think the defense wants to portray here. You say physical evidence linking. What are you referring to? For example, Your Honor, the false credit cards. There's the John Miller credit card, which was the credit card used when defendant checked into the Extended Stay Hotel. It was found together with a second false credit card, a Michael Rowan credit card. Those two credit cards were found concealed underneath the bed in defendant's bedroom. It was issued by the same bank, had the same sequential first eight account digit numbers as the two false credit cards that Bolden used when he obtained cash through the hotels, the Jamal Covington and the Michael Mitchell counter. There's a physical evidence there that ties those two things together. There is the fact that there are Federal Express shipping materials, boxes, a drop off location sheet, airway bill at the defendant's residence as well. There is the carpet deodorizer. It is an identical industrial size 32 ounce can, same brand, size, type, scent. Hadn't been used. Hadn't. Well, but it was certainly, we weren't suggesting in any sense that the shipping occurred from the defendant's home. The shipping of the drugs occurred at Bolden's home. And we know that there is identical cans of carpet deodorizer that is at Bolden's home. And we also know from the testimony that that is a masking agent and that that masking agent was consistent with the masking agent that was found in the cocaine that was shipped. There's shredded trash with Bolden's name in defendant's car. And that's some of the physical evidence here and the cell phones and other things that we also introduced as well. But there is certainly a connection between those two conspiracies. I guess I cannot emphasize enough that defendant has engaged in illegal conduct that matches the MO of the co-conspirators. This isn't a case where a defendant just happens to engage in illegal conduct by having a false identification. We have him on surveillance video actually using that false identification to check into a local area hotel, the extended stay hotel, which is the same chain of the hotel where the cocaine was shipped just one week prior. Defendant tries to conceal this conduct by hiding the credit card, the license, the hotel room key underneath his bed. And then the circumstances regarding the shipment itself are suspicious because if a defendant was going to be kept in the dark, there's no reason why Bolden would go with them to the drugs. I mean, if defendant was just being asked to be an errand boy, there's no reason that Bolden would be there as well because Bolden casts as much suspicion on himself by meeting at his own house, driving together to the Federal Express Center to mail this package of cocaine. I would note that this shipment was done by the defendant in defendant's car. There's a package of cocaine in defendant's trunk. They're speeding to the Federal Express Center to make a 6 o'clock cutoff. There's no explanation for why they have to go to a different city 45 minutes to an hour away in order to ship this Federal Express. And it's hard to believe that the jury could have assumed that a defendant would allow someone to put cocaine or a big package like this in the car and never ask, what's in the box? Why are we traveling an hour away to drop this off? Why do we have to make the 6 o'clock cutoff today? And if you want me to do a favor, I'll just drop it off myself some other time. But they do it together. That's evidence of joint coordinated activity that shows the conspiracy here. I see I have just about 10 seconds left if there's any further questions. Otherwise, I'm happy to submit. Thank you, Your Honor. Thank you. I just have a couple of comments. It is exactly the unwitting dope that would have to be accompanied by the owner of the cocaine to make sure that the unwitting dope doesn't dump it somewhere or doesn't get rid of it in a manner that the owner of the cocaine wouldn't want him to do. If he knew there was cocaine, then he could go by himself. Lloyd, I'm talking about. But because Lloyd doesn't know, Bolden has to be with him. It is Bolden who drives the car. It is Bolden who drives at a high rate of speed and goes 45 minutes away to try and make that delivery. Yes, that delivery. The opportunity to present the unwitting dope defense was wasted by defense counsel when he invited testimony that had not been put in by the prosecution. And then once he invites in the testimony with Terry Lloyd's name on it, tries to show that it wasn't that the police officers couldn't identified, couldn't have identified this Terry Lloyd and then fails in that attempt. So it's he created he dug the hole, jumped in it and took the defendant with him. There is no question that the prejudice here is that the unwitting dope defense was thrown away by the ineffective assistance of counsel. And we'd ask the court to reverse. Thank you. Case just argued will be submitted. The next case for argument is United States versus Gonzalez. Marisol.
judges: Reinhardt, Trott, Robart